UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Crim. No. 3:20cr126 (JBA) |
| ASANTE GAINES | September 20, 2021 |

**RULING ON DEFENDANT ASANTE GAINES' MOTIONS TO SUPPRESS**

Defendant Asante Gaines was arrested on January 27, 2020 in connection with his alleged involvement in the attempted murder of four rival gang members in front of a Bridgeport state courthouse. He moves to suppress (1) the portion of his custodial statement made before he was given his *Miranda* warnings [Doc. # 199]; (2) the records of his cell phone number ending in 6126 obtained via search warrant [Doc. # 200]; and (3) evidence derived from his electronic monitoring bracelet [Doc. # 201]. The Government opposes all motions [Docs. ## 202, 203].

**I.   Background**

Around noon on January 27, 2020 four men were shot in their vehicle outside of a Bridgeport courthouse. (Warrant Application, Ex. A to Gov't Omnibus [Doc. # 203-1] ¶ 1.) Surveillance footage shows a gray Subaru Forester, which was reported stolen from Stamford, CT on January 8, 2020, drive up to the victims' vehicle and gun shots fired from inside the Subaru. (*Id.* ¶ 4.) Then the Subaru is shown speeding away from the scene. (*Id.*) The surveillance footage shows another vehicle, a blue Volkswagen Golf, leaving the scene in the opposite direction. Hours later, police located the blue Volkswagen in East Bridgeport. (*Id.*) After a brief high-speed car chase, four men exited the vehicle on foot; among them was Defendant Asante Gaines. (Gov't's Omnibus Opp'n to Defs.' Add't'l Pretrial Mots. ("Omnibus Opp'n") [Doc. # 203] at 7.) Police arrested Defendant, who was wearing an electronic

monitoring bracelet as a condition of his parole,[1] and brought him to the police station after he was checked for injuries at the hospital. (*Id.* at 3.) Police also recovered a cache of cell phones from the blue Volkswagen and another cell phone on Defendant's person at the time of the arrest. (*Id.* at 7-9.)

At the police station, a Bridgeport police detective interviewing Defendant asked him for his name, birthdate, address and cell phone number. The Government offers the following excerpt from the interrogation:

> **Lt. LaMaine:** Can you do me a favor and spell Asante for me?
> **Gaines**: A-s-a-n-t-e
> **LaMaine**: A-n-t-e, Gaines, right? How do you spell that?
> **Gaines:** G-a-i-n-e-s
> **LaMaine**: And your date of birth?
> **Gaines**: x/xx/96
> **LaMaine**: And where do you live?
> **Gaines**: 431 Ellsworth Avenue, New Haven, Connecticut
> **LaMaine**: Aah cellphone number?
> **Gaines**: 475-309-6126
> **LaMaine**: 6126, umm you have two right?
> **Gaines**: No, that's my number
> **LaMaine**: Yeah, but don't you have two phones? Didn't you get arrested with two phones? What about the other one?
> **Gaines**: That's not my phone, that's my number.
> **LaMaine**: You have one number, but what's the number for the second phone though?
> **Gaines**: That's my number. That other phone, that one doesn't have a number
> **LaMaine**: Oh the other one, you only use it for like Wifi?
> **Gaines**: Yeah

(Omnibus Opp'n at 12.) Thereafter, police read Defendant his *Miranda* rights. Later in the interrogation, the detective told Defendant that he would seek a search warrant for the phones' contents. (Mot. to Suppress Custodial Statement [Doc. # 199] at 3.) During the interrogation, the detective also referred to Defendant's GPS location, allegedly obtained from his Parole Officer by way of the electronic monitoring device on his ankle. (Mot. to

---

[1] Defendant was released on parole on December 2, 2019. As a condition of parole, he agreed to wear a GPS tracking device from which "all data gathered will be stored as an official record." (GPS Monitoring Agreement, Ex. 1 to Gov't's Response to Def.'s Mot. to Suppress [Doc. # 202-1] at 1.)

Suppress Evid. Derived from Electronic Monitoring Bracelet [Doc. # 201] at 2.) After waiving his *Miranda* rights, Defendant admitted to being in the blue Volkswagen with other codefendants, including Diomie Blackwell. (Warrant Application, Ex. A to Gov't Omnibus Opp'n [Doc. # 203-1] ¶¶ 9-10.) A car registered to Blackwell was seen by police following the gray Subaru after the shootings. (*Id.* ¶ 5.)

On January 31, 2020, Bridgeport police obtained a search warrant for the call records, text message logs, data usage information, and location data for the number ending in 6126 from January 13 to January 27, 2020. (*See id.* ¶¶ 13-14.) Defendant was then charged with RICO conspiracy, VCAR assault with a dangerous weapon, VCAR attempted murder, and VCAR conspiracy to commit murder. (Superseding Indictment [Doc. # 92] at 1-2, 8-9.)

Defendant now moves to suppress three pieces of evidence. First, he seeks to suppress "the disclosure of his cellphone number in response to the interrogating detective's question seeking that information as well as Defendant's admission that he owned a second cellphone." (Mot. to Suppress Custodial Statement [Doc. # 199] at 1). Second, Defendant seeks to exclude "evidence seized from the cellphone associated with a number that ends in 6126" because the search warrant lacked particularity, was unconstitutionally overbroad, and failed to provide probable cause. (Mot. to Suppress Evidence Obtained from Cellphone [Doc. # 200] at 1). Finally, Defendant moves to suppress "evidence derived from an electronic monitoring bracelet that he was wearing on January 27, 2020, tracking GPS data revealing his location at various times that day and the evidence derived therefrom." (Mot. to Suppress Evidence Derived from Electronic Monitoring Bracelet [Doc. # 201] at 1.) The Government opposes all motions arguing that *Miranda* warnings are not necessary for general pedigree questions like an individual's cell phone number, (Omnibus Opp'n at 11), that the warrant was not overbroad, (*id.* at 16-17), and that, as a parolee who opted to wear the GPS tracking device, Defendant enjoys no privacy interest in the data obtained from the bracelet, (Gov't

Response to Def.'s Mot. to Suppress Evidence Derived from Electronic Monitoring Bracelet [Doc. # 202] at 1-2).

## II. Discussion

### A. Custodial Statements

Defendant argues that the interviewing detective suspiciously waited to recite the *Miranda* warnings until after Defendant's admissions regarding his phone number and use of the second phone and that "[t]he detective should have known that Mr. Gaines['] pre-Miranda disclosure of his cellphone number and the fact that he owned another phone could be incriminating because, during the post-Miranda portion the interrogation, the detective expressed his intention to seek a search warrant for the phones' contents." (Mot. to Suppress Custodial Statement [Doc. # 199] at 2-3.) The Government does not contest that Defendant was in custody and was not given his *Miranda* warning when police asked him about his cell phones, numbers, and usage. Rather, the Government argues that the pedigree exception applies here because the investigator's questions about the two cell phone numbers were asked for routine, administrative purposes given that Defendant was arrested with two cell phones. (Omnibus Opp'n at 11.)

Under the Fifth Amendment: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To preserve this right, law enforcement must inform individuals subject to custodial interrogation of their rights to consult with a lawyer and to have the lawyer with him during interrogation," and that anything stated during the interrogation "can be used in evidence against him." *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). The *Miranda* safeguards protect any person in custody who is subjected to either express questioning or its functional equivalent. *Rosa v. McCray*, 396 F.3d 210, 220 (2d Cir. 2005).

However, an exception to the *Miranda* requirement exists where questioning comprises merely "[t]he collection of biographical or pedigree information through a law

4

enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest . . . ." *Id.* at 221 (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 601, (1990)). To be sure, not all "pedigree" questions fall under this exception. It applies only when the question asked by an officer: "(1) seeks biographical data necessary to complete booking or pretrial services, (2) appear[s] reasonably related to the police's administrative concerns, and (3) . . . is not likely to elicit an incriminating response." *United States v. Durand*, 767 F. App'x 83, 87 (2d Cir. 2019) (quoting *Rosa*, 396 F.3d at 221) (internal quotations omitted); *see also United States v. Mack*, No. 3:13-CR-00054 (MPS), 2016 WL 1391043, at *3 (D. Conn. Apr. 7, 2016) (concluding that a detective's pre-*Miranda* question as to whether the defendant had seen the "Wanted" poster with his face on it "was reasonably likely to elicit an incriminating response [] and therefore [] must be suppressed"); *United States v. Barclay*, No. 1:19-CR-00221-BLW, 2020 WL 5995579, at *3 (D. Idaho Oct. 9, 2020) (suppressing pre-*Miranda* admission of the defendant's cell phone number in a child pornography case in which the defendant solicited pictures from an underaged girl using the phone number he gave to the police).

Initially, the detective's question to Defendant seeking his cell phone number was a valid pedigree question. Police may ask Defendant for his cell phone number as a matter of administrative booking before advising Defendant of his *Miranda* rights. *See United States v. Durr*, No. 09–CR–6232L, 2010 WL 3199887, at *7 (W.D.N.Y. July 22, 2010); *see also United States v. Nogueira*, No. 08–CR–876 (JG), 2009 WL 3242087, *2 (E.D.N.Y. 2009) (finding that "[q]uestions regarding the defendants' telephone numbers amounted to routine booking questions" and were "appropriately asked during the arrest and booking process"). Although the police used the information obtained from their pre-*Miranda* questioning to secure a warrant for the 6126 number, the coincidentally incriminating nature of the information received from pedigree questioning "does not, by itself, alter the general rule that pedigree questioning does not fall under the strictures of *Miranda*." *Rosa*, 396 F.3d at

5

221. The police might have presumed that one of the cell phones recovered at Defendant's arrest was linked to his personal phone number, but it was reasonable as an administrative formality to obtain an accurate phone number from Defendant. *See United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986) (affirming admission of defendant's response to a pedigree question, even though the response helped establish defendant's intent to commit the crime with which he was charged). Thus, the Court concludes that the Bridgeport police detective lawfully asked for Defendant's cell phone number, as the question was asked for an administrative purpose and was not reasonably likely to elicit incriminating evidence.

But once Defendant confirmed his phone number for the detective, further inquiry into a second phone went beyond the pedigree exception. The detective had established Defendant's phone number just before inquiring about a second phone in police possession, obviating any administrative need to learn whether that second phone belonged to Defendant. *United States v. Mateo*, 392 F. Supp. 3d 454, 457, 462 (D. Vt. 2019) ("Because the DEA Agents were well aware of Defendant's cell phone number, they had no need to ask her for it in order to process her for a federal crime."). Without a clear administrative need, the questions likely served an investigative purpose.

Furthermore, the police should have known that Defendant's admission that he used another phone recovered during his arrest might be incriminating. Given the detective's representation to Defendant that he intended to apply for a warrant in connection with the phones, (Mot. to Suppress Custodial Statement [Doc. # 199] at 3), the police likely knew during the interview that Defendant's admitted use of the phone would be useful to the Government in proving one or more elements to the conspiracy charged against him, (Omnibus Opp'n at 12). Thus, extracting from Defendant information about a second cell phone after already acquiring his phone number offered little more than verbal confirmation of a potentially incriminating fact already in the detective's knowledge. *See Durand*, F. Supp. 3d at 73; *see also Mateo*, 392 F. Supp. 3d at 457, 462 (holding a question about a phone

6

number improper where the number was already known, and phone calls were recorded). Accordingly, Defendant's admission to use of a second cell phone must be excluded because he was not properly informed of his *Miranda* rights before that questioning commenced.

### B. Evidence Obtained from Defendant's Cell Phone

Defendant raises three arguments to support his contention that the warrant issued to search his cell phone was unlawful: (1) it was not supported by probable cause; (2) it lacked particularity; and (3) it was overbroad in the scope of information searched and timeframe from which data was gathered. (Mot. to Suppress Evidence Obtained from Cellphone [Doc. # 200] at 1.) Conversely, the Government justifies the warrant as sufficiently specific in scope and time because the fourteen-day period for which the warrant sought Defendant's communications corresponded with the time during which it alleges Defendant engaged in a conspiracy with his codefendants. (Omnibus Opp'n at 20.) The Government argues further that the warrant sought only communications logs rather than the content of those messages so that investigators could determine only who else Defendant engaged in the alleged conspiracy with and when. (*Id.* at 20-21.) Finally, the Government maintains that, if the warrant was not sufficiently particular, the good faith exception applies because the officers relied in good faith on a judge's determination of the warrant's validity. (*Id.* at 22.)

The Fourth Amendment recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing . . . reasonableness generally requires the obtaining of a judicial warrant" which must be issued only upon a "showing of probable cause." *Veronia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619 (1989)). When police acquire a warrant supported by a judicial finding of probable cause, that finding is "entitled to substantial deference," especially "in close cases where doubts should be resolved in favor of upholding the warrant." *United*

7

*States v. Travisano*, 724 F.2d 341, 345 (1983) (internal citations omitted). The Court considers only whether the "'totality of the circumstances' afforded the magistrate 'a substantial basis'" for a finding of probable cause. *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). With this framework in mind, the Court reviews the warrant application for each potential Constitutional infirmity Defendant asserts.

    i.  *Probable Cause*

"The essence of probable cause is a reasonable, objective basis for belief in a suspect's guilt, although not necessarily proof of guilt beyond a reasonable doubt." *United States v. Webb*, 623 F.2d 758, 761 (2d Cir. 1980). "[P]robable cause is a[n] . . . assessment of probabilities in particular factual contexts[] not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. A finding of probable cause is especially essential in the context of smartphone searches. Courts warn of the enormous "potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive," *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013), and "the special concerns that apply when law enforcement seize and search people's personal electronic data and communication devices" because they contain "such vast quantities of irrelevant private material," *United States v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) (internal citations omitted); *see also Riley v. California*, 573 U.S. 373, 393 (2014) ("Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person[, . . . ] notabl[y in] their immense storage capacity.").

Even in view of the substantial privacy concerns contemplated by the Supreme Court in *Riley*, the warrant executed in this case did not infringe upon Defendant's Fourth Amendment rights. Defendant's call records do not enjoy the special privacy safeguards required by *Riley* and its progeny. *See Smith v. Maryland*, 442 U.S. 735, 745 (1979) (holding that individuals "entertain[] no actual expectation of privacy in the phone numbers [] dialed,

and that[, regardless, such an] expectation was not 'legitimate'"). Moreover, while location data and other data mined from a cell phone are afforded heightened protections, those considerations were accounted for when the police obtained a warrant supported by probable cause to search Defendant's cell phone for his communication and location records. *See Riley*, 573 U.S. at 386 (holding that police officers must generally *obtain a warrant* before searching the contents of a phone); *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) ("Before compelling a wireless carrier to turn over a subscriber's [cell site location information], the Government's obligation is a familiar one—get a warrant.").

Two factors lead to the Court's conclusion that the warrant was supported by probable cause. First, Defendant was the occupant of a vehicle matching the description of the Volkswagen seen at the courthouse at the time of the shootings. (*See* Search Warrant, Gov't Ex. A [Doc. # 203-1] ¶ 4.) City surveillance footage and the GPS data from Defendant's ankle monitor confirm this fact. (*Id.* ¶ 7.) The location data from the cell phone reasonably could provide police with additional corroboration. Second, Defendant admitted to being at the courthouse with another codefendant, Diomie Blackwell—whose car was also seen following the gray Subaru after the shootings (*Id.* ¶¶ 5, 9-10), raising further suspicion about Defendant's connection to the shootings and the other suspects involved. This collection of events coupled with the deference afforded to judicial determinations of probable cause satisfies the Court that the magistrate judge had a substantial basis for finding probable cause that Defendant's cell phone data would reveal incriminating evidence about his activities.

> ii.   *Particularity/Overbreadth*

A search warrant's particularity is a legal matter distinct from its overbreadth. The issue of particularity concerns whether the warrant identifies with reasonable certainty those items to be seized. *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). To be sufficiently particular, "a warrant must identify the specific offense for which the police have

9

established probable cause[,] describe the place to be searched[, and] specify the items to be seized by their relation to designated crimes." *Galpin*, 720 F.3d at 445–46 (internal citations omitted); *see also United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993) (finding unconstitutional a warrant that did not mention a particular criminal statute or specify the type of criminal conduct).

On the other hand, the overbreadth inquiry asks "whether the warrant authorized the search and seizure of items as to which there is no probable cause." *United States v. Dupree*, 781 F. Supp. 2d 115, 148 n. 14 (E.D.N.Y. 2011) (internal quotation marks omitted). Thus, "an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (internal quotations omitted) (citing 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (finding that a warrant authorizing a search for evidence "relating to the commission of a crime" was overbroad because it did not specify the nature of suspected crimes); *United States v. Buck*, 813 F.2d 588, 590–92 (2d Cir. 1987) (finding overbroad a warrant authorizing the seizure of "any papers, things or property of any kind" relating to the specified crime because it failed to limit the type of evidence to be seized).

The warrant in this case was sufficiently particular in the data requested. The police had probable cause to believe that the cell phone location data would confirm what they already had cause to believe: Defendant's movements implicated his involvement in the shootings and his communications would reveal his involvement in the conspiracy's planning. The police did not seek a total extraction of the cell phone's contents, but rather limited the request to the types of communication that could demonstrate Defendant's participation in the planning and execution of the conspiracy. Defendant argues that the warrant application articulated only a "hunch" that Defendant's call records would reveal his associations with the other codefendants. (Mot. to Suppress Evidence Obtained from

10

Cellphone [Doc. # 200] at 6.) But when viewed in the totality of the circumstances, that is not so. The issuing magistrate judge had sufficient information to support probable cause that specific data would reveal Defendant's dealings with the codefendants and that his movements were consistent with the movements of the other codefendants the day the courthouse shootings took place. (*See* Search Warrant, Gov't Ex. A [Doc. # 203-1] ¶ 13; Omnibus Opp'n at 9 n.4.) Thus, the warrant did not authorize a search that was less particular than the probable cause justified.

Additionally, the warrant was not overbroad. The warrant authorized the seizure of the call records, text messages, data usage, and location records for the time period of January 13, 2020—shortly after the gray Subaru was reported as stolen—to January 27, 2020, the date of the shootings. This temporal limit is sufficiently tied to the acts of the conspiracy for which Defendant is charged. Although the Government does not allege that Defendant occupied the stolen Subaru, his activities before and after the shootings reveal relevant connections to the occupants of the Subaru. (*See* Search Warrant, Gov't Ex. A [Doc. # 203-1] at ¶¶ 4-5.) As the warrant application detailed, the police had probable cause to believe that Defendant had been in communication with others in planning an attempted murder and that the theft of the Subaru was a step toward that goal. (*See generally id.*). Therefore, the warrant was not overly broad in scope or timeframe.

Considering the specific type of information sought by the police, the temporal limits placed on those records, the connection between that information and Defendant's suspected offenses, and the deference owed to a judicial determination of probable cause, the Court finds that the warrant conformed to the measure of probable cause and particularity the Fourth Amendment demands and it was not overbroad in its reach. The evidence gathered as a result will not be excluded.[2]

---

[2] The Government additionally argues that the good faith exception applies to the evidence gathered pursuant to the warrant because the police relied in good faith on a magistrate judge's determination

11

### C. Data Obtained from Electronic Monitoring Device

Defendant contends that the evidence should be suppressed because the gathering of data from the electronic monitoring device was a search that violated his reasonable expectation of privacy under the Fourth Amendment and he did not consent to the data being shared with the police. (*See* Reply to Gov't's Response to Mot. to Suppress Evidence Derived from Electronic Monitoring Bracelet [Doc. # 204] at 2].) The Government argues that the data obtained from the tracking device affixed to Defendant's person should not be suppressed because Defendant had no legitimate expectation of privacy and he consented to the dissemination of the location data. (*See* Gov't's Resp. to Mot. to Suppress Evid. Derived from Electronic Monitoring Bracelet ("Gov't's Resp.") [Doc. # 202] at 9.)

The Fourth Amendment protects "people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick*, 433 U.S. 1, 7 (1977), abrogated by *California v. Acevedo*, 500 U.S. 565 (1991). "[P]arolees have fewer expectations of privacy [] because . . . parole is an established variation on imprisonment of convicted criminals," and the state "has an overwhelming interest in supervising parolees because parolees are more likely to commit future criminal offenses." *Samson v. California*, 547 U.S. 843, 850, 853 (2006) (internal quotations omitted). A parolee's "acceptance of a clear and unambiguous search condition significantly diminishe[s his] reasonable expectation of privacy" because he consented to the terms of his release and thus has no "expectation of privacy that society would recognize as legitimate." *Id.* at 852.

When Defendant chose to be released on parole, he agreed to fully participate in the GPS tracking program and was made aware that his location would be recorded in an official record via an electronic monitoring device on his ankle. (*See* GPS Monitoring Agreement at 1.) Thus, he has a substantially diminished expectation of privacy in his location at any given

---

of the warrant's validity. (Omnibus Opp'n at 22.) Because the Court finds that the warrant was valid, it declines to opine on this argument.

time. *Samson*, 547 U.S. at 852. While this does not mean that Defendant enjoys no privacy in his whereabouts, what privacy interest he does retain must be balanced against the law enforcement motivation for extracting Defendant's location data from the monitoring device. *See United States v. Dennis*, No. 3:18-cr-328 (VAB), 2020 WL 1316658, at *7-8 (D. Conn. March 20, 2020) (finding that the parolee subjected to a law enforcement search had at least a minimal expectation of privacy that needed to be balanced against the government interest).

Turning to the law enforcement interest, the police had a legitimate reason for searching Defendant's GPS location data. Defendant violated an Exclusion Order that was a condition of his parole by traveling to Bridgeport on the day of the shootings. (Gov't's Resp. at 5.) Moreover, his connections to the codefendants gave police cause to believe that Defendant was involved in a conspiracy to murder members of a rival gang at the courthouse. In the hours after the courthouse shootings, police were engaged in an effort to apprehend the suspects who were on the loose at that time. Considering the Government's "overwhelming interest in supervising parolees" such as Defendant, *Samson*, 547 U.S. at 853, and the particular circumstances, it was reasonable for police to receive Defendant's GPS tracking data from Defendant's Parole Officer confirming his whereabouts that day, to ascertain the extent of his involvement in a recent crime, and to track him down for arrest. (*See* Search Warrant, Gov't Ex. A [Doc. # 203-1] at 4.)

Due to Defendant's minimal privacy interest in the GPS data recorded by his electronic ankle monitor, the Government's law enforcement interest, and the knowledge the police had at the time, the balance of interests tips in the Government's favor. The evidence gathered from the GPS tracking device will not be suppressed.

### III. Conclusion

Defendant's motion to suppress with respect to Defendant's custodial statements [Doc. # 199] is GRANTED in part and DENIED in part, and Defendant's motions to suppress with respect to the data gathered from his cell phone and GPS tracking device [Docs. ## 200, 201] are DENIED. No evidentiary hearing is necessary as the parties do not have any material factual disputes.[3]

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of September 2021.

---

[3] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal citations and quotation marks omitted). In the present case, however, although Defendant's arguments raise issues relating to the constitutionality of the un-*Mirandized* statements, warrant, and ankle monitor data search, there are no contested issues of fact. Therefore, the Court does not find it necessary to hold such hearing.